

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2003

# Merritt v. Blaine

Precedential or Non-Precedential: Precedential

Docket 01-2455

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Merritt v. Blaine" (2003). *2003 Decisions.* Paper 586.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/586

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 16, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2455

MARVON MERRITT,
a/k/a MERRIT MONROE

v.

CONNER BLAINE; THE DISTRICT ATTORNEY
OF THE COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA

Marvon Merritt,
                                        *Appellant*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 00-cv-02338)
District Judge: Hon. John P. Fullam

Argued December 20, 2002

Before: SLOVITER, McKEE, and ROSENN, *Circuit Judges*

(Filed: April 16, 2003)

Jane Elizabeth Lee (Argued)
Portland, Maine 04101

Attorney for Appellant

Robert M. Falin (Argued)
  Assistant District Attorney
Thomas W. Dolgenos
  Chief, Federal Litigation
Ronald Eisenberg
  Deputy District Attorney
Arnold H. Gordon
  First Assistant District Attorney
Lynne Abraham
  District Attorney
Philadelphia, PA 19102-1582

  Attorneys for Appellees

## OPINION OF THE COURT

SLOVITER, *Circuit Judge*:

Marvon Merritt appeals from the order of the District Court dismissing his petition for habeas corpus as time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Merritt v. Blaine*, No. 00-2338 (E.D. Pa. May 29, 2001). Merritt argues that the District Court erred by not tolling the statute of limitations for his federal habeas corpus petition during the period of time he was pursuing post-conviction relief in state court under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. §§ 9541-9546 (1998) (PCRA). This court granted Merritt's request for a certificate of appealability with respect to two issues:

> (1) whether the invocation in a state application for post-conviction relief of a statutory exception to the state's timeliness requirement renders the application "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2); and (2) whether appellant has established "extraordinary circumstances" warranting the equitable tolling of that limitations period.

*Merritt v. Blaine*, No. 01-2455 (3d Cir. May 20, 2002). We hold that an untimely application for state post-conviction relief by a petitioner, who sought but was denied application of a statutory exception to the PCRA's time bar,

is not "properly filed" under 28 U.S.C. § 2244(d)(2). We also agree with the District Court's rejection of Merritt's request for equitable tolling of the statute of limitations. Therefore, we will affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Merritt was convicted of murder of the second degree, robbery, criminal conspiracy and possession of the instrument of a crime for his participation in the fatal shooting of George Dunbar in Philadelphia, Pennsylvania. Dunbar was killed when Merritt and his co-conspirator Ronald Baxter sought to rob Dunbar at his home. After Merritt brandished a gun, Dunbar took out a gun and fired two shots. Dunbar and Merritt struggled, while Baxter and Robert Wells, who was present, also fought. It was the Commonwealth's position that Merritt shot Dunbar after Dunbar fell to the floor. Baxter was shot in the leg.

At trial, Merritt presented as his defense that the state's witness, Wells, shot both Dunbar and Baxter. As stated, the jury convicted Merritt. The Superior Court of Pennsylvania affirmed Merritt's conviction and sentence on October 9, 1986, *Commonwealth v. Merritt*, 361 Pa. Super. 636, 517 A.2d 1365 (1986) (table), and the Supreme Court of Pennsylvania denied Merritt's petition for allowance of appeal on July 7, 1987. *Commonwealth v. Merritt*, 516 Pa. 639, 533 A.2d 711 (1987) (table).

Merritt filed his first post-conviction review petition in state court on June 21, 1988, pursuant to the PCRA. After appointing counsel and allowing an amended petition, the PCRA court denied relief on November 9, 1993. The denial was affirmed by the Pennsylvania Superior Court on January 17, 1995, *Commonwealth v. Monroe* (a name Merritt also used), 442 Pa. Super. 659, 660 A.2d 123 (1995) (table), and the Pennsylvania Supreme Court denied allowance of appeal on November 8, 1995, *Commonwealth v. Monroe*, 542 Pa. 663, 668 A.2d 1127 (1995) (table).

On December 20, 1996, Merritt filed a second *pro se*

PCRA petition in state court. Merritt alleged that he had recently learned of a new technology, the Scanning Electron Microscope (SEM), that was not available at the time of his trial. He alleged that SEM could be used to determine if the bullet that killed Dunbar and the bullet that wounded Baxter came from the same gun. Merritt argued that identifying the source of the bullets was essential to his defense at trial that Wells shot both Dunbar and Baxter, while the state argued at trial that Dunbar and Baxter were shot by different persons. Merritt asked the PCRA court to order a SEM analysis of the bullets.[1]

The PCRA court appointed counsel for Merritt. Counsel requested, and the court granted, additional time to file an amended petition. However, before the amended petition was filed, the PCRA court denied Merritt's *pro se* PCRA petition without a hearing.[2] *Commonwealth v. Monroe*, Nos. 1736-39 (Phila. Co. Ct. C.P. August 12, 1997) (order dismissing second PCRA petition); *Commonwealth v. Monroe*, Super. Ct. No. 3909 Phila. 1997 (Phila. Co. Ct. C.P. April 12, 1998) (opinion dismissing second PCRA petition). The court denied the petition both on the merits and because it was untimely.

On the merits, the court held that (1) Merritt failed to establish in sufficient form and substance the facts stated in support of his grounds for relief; (2) Merritt neither alleged nor established that SEM results constitute such scientifically adduced evidence as is qualified as admissible at trial; (3) the issue of the sufficiency of the evidence to support Merritt's convictions had been previously litigated and "is presently waived"; (4) Merritt failed to present evidence sufficient to establish a strong prima facie showing that a miscarriage of justice may have occurred; and, in addition, Merritt's ineffective assistance of counsel claims failed because the SEM analysis would have been cumulative and therefore did not affect the outcome of the

1. Merritt also alleged ineffective assistance of counsel based on his prior counsel's failure to examine or to request an examination of the bullets with an Electron Microscope.

2. Merritt does not assert as error that the PCRA court failed to wait until the amended petition was filed.

trial and because counsel cannot be held ineffective for failure to predict future technological changes found to be acceptable devices to produce reliable ballistics evidence. *Commonwealth v. Monroe*, Nos. 1736-39, order at 3-6 (Phila. Co. Ct. C.P. August 12, 1997). The court held alternatively that the petition was untimely filed under 42 Pa. Cons. Stat. Ann. § 9545(b)(1) because it was not filed within a year of the date Merritt's conviction became final and "none of the exceptions [to the PCRA's timeliness requirements] to be found in § 9545(b)(1)(i)(ii)(iii) were alleged or proven. . . ." *Commonwealth v. Monroe*, Nos. 1736-39, order at 7 (Phila. Co. Ct. C.P. August 12, 1997).

On October 12, 1999, the Pennsylvania Superior Court affirmed the dismissal of the petition because it was time-barred, holding that Merritt failed to allege or prove any of the applicable exceptions under 42 Pa. Cons. Stat. Ann. § 9545(b)(1). *Commonwealth v. Monroe*, No. 3909 Phila. 1997, slip op. at 4 (Pa. Super. Oct. 12, 1999). The Supreme Court of Pennsylvania denied allowance of appeal on February 24, 2000.

On May 5, 2000, Merritt filed this petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. He argued that the state court's refusal to order the SEM analysis denied his rights to due process, equal protection and effective assistance of counsel. The Magistrate Judge recommended denial of Merritt's petition as time-barred. The Magistrate Judge recognized that 28 U.S.C. § 2244(d)(2) tolls AEDPA's statute of limitations while any "properly filed" application for state post-conviction relief is pending, but reasoned that because the state court had found Merritt's second PCRA petition to be untimely, it was "not properly filed and it cannot serve to statutorily toll the habeas period of limitations." App. at 9. The Magistrate Judge also found that Merritt was not eligible for equitable relief from AEDPA's statute of limitations because Merritt failed to demonstrate the "extraordinary circumstances" necessary for equitable tolling.

The District Court adopted and approved the Magistrate Judge's report and recommendation. *Merritt v. Blaine*, No. 00-2338 (E.D. Pa. May 29, 2001). Merritt filed a Notice of

Appeal on June 6, 2001, and we granted the certificate of appealability. We consider first whether Merritt's second PCRA application was "properly filed" under 28 U.S.C. § 2244(d)(2) and, if not, whether he is entitled to equitable tolling of the habeas corpus statute of limitations.

## II.

### DISCUSSION

#### A.  Jurisdiction and Standard of Review

Merritt filed his petition for habeas corpus under 28 U.S.C. § 2254. The District Court exercised jurisdiction over the petition under 28 U.S.C. § 2254(a). We have jurisdiction over the District Court's final order dismissing the petition as untimely pursuant to 28 U.S.C. §§ 1291 and 2253. "We have plenary review over statute of limitations issues." *Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

#### B.  AEDPA's Statute of Limitations

AEDPA imposes a one-year statute of limitations on applications for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(1)(A), the statute of limitations begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In this case, Merritt's conviction became final prior to the enactment of AEDPA. By its terms, AEDPA became effective on April 24, 1996. Therefore, the statute of limitations for Merritt's habeas petition did not begin to run until April 24, 1996. We "implied from the statute a one-year grace period for those petitioners whose convictions became final before the effective date of AEDPA. . . ." *Nara*, 264 F.3d at 315; *see Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) ("we hold that habeas petitions filed on or before April 23, 1997, may not be dismissed for failure to comply with § 2244(d)(1)'s time limit"). However, Merritt did not file his habeas corpus petition until May 5, 2000, more than three years after the expiration of the statute of limitations.

The statute of limitations for federal habeas corpus petitions is subject to two tolling exceptions: (1) statutory

tolling during the time a "properly filed" application for state post-conviction review is pending in state court and (2) equitable tolling, a judicially crafted exception. *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

## C. "Properly Filed" Application for State Post-Conviction Relief

AEDPA expressly provides that its one-year limitation is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Merritt's second PCRA petition was pending in state court from December 20, 1996 through February 24, 2000. Therefore, if Merritt's second PCRA petition were "properly filed," the statute of limitations for his habeas petition would have been tolled from December 20, 1996, the date his second PCRA petition was filed in state court, through February 24, 2000, and his habeas corpus petition, filed on May 5, 2000, would be timely.

However, to fall within the AEDPA tolling provision, the petition for state post-conviction review must have been both pending and "properly filed." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir.), *cert. denied*, *Horn v. Fahy*, 534 U.S. 944 (2001). There is no question that Merritt's second PCRA petition was pending. The principal issue on this appeal is whether it was "properly filed."

The Supreme Court has stated that "an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original). This compliance requirement includes rules governing the "form of the document" and "the time limits upon its delivery." *Id.*; *see also Fahy*, 240 F.3d at 243 (a "properly filed" application must be " 'submitted according to the state's procedural requirements, such as the rules governing the time and place of filing.' ") (citation omitted).

Merritt failed to file his second PCRA petition in accordance with the timeliness requirements of 42 Pa. Cons. Stat. Ann. § 9545(b)(1). However, the PCRA includes statutory exceptions to its time bar that apply when:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa. Cons. Stat. Ann. §§ 9545(b)(1)(i)-(iii).

Merritt does not contend that he falls within subparagraph (i) or (iii) above. Instead, Merritt alleges that in the PCRA court he asserted the exception for unknown facts.[3] He contended there, and contends here, that the newly available SEM technology will allow him to support his defense by determining the previously unknown fact whether the bullets shot at Dunbar and Baxter came from the same gun.

The PCRA court refused to apply the statutory exception and held Merritt's PCRA petition untimely. *Commonwealth v. Monroe*, Nos. 1736-39 (Phila. Co. Ct. C.P. August 12, 1997); *Commonwealth v. Monroe*, Super. Ct. No. 3909 Phila. 1997 (Phila. Co. Ct. C.P. April 12, 1998). The Superior Court of Pennsylvania affirmed, finding that Merritt failed to allege or prove any of the statutory exceptions to the PCRA's time bar. *Commonwealth v. Monroe*, No. 3909 Phila. 1997 (Pa. Super. Oct. 12, 1999). Merritt does not challenge the state court's ruling. Rather, he contends that even if his PCRA petition was properly dismissed as untimely, it was still "properly filed" under the requirements of AEDPA. Although an untimely state petition is generally not

---

3. Merritt only argued that he required SEM testing to ascertain the fact whether both the bullet that killed Dunbar and the bullet that wounded Baxter came from the same gun. The Commonwealth has not argued before us that Merritt's argument does not fit within subsection (ii).

"properly filed," Merritt argues that an untimely application is "properly filed" if the applicant asserted a statutory exception to the statute of limitations of a state post-conviction relief statute.

As a preliminary matter, we must consider whether Merritt's request that the District Court direct SEM analysis of the bullet evidence is moot. In response to our raising the issue, we learned at oral argument that neither Merritt nor the Commonwealth had attempted to ascertain whether the bullets at issue were even available for examination. We directed the Commonwealth to investigate the location and status of the bullets and report back to us. The Commonwealth notified this court by letter that the Clerk of Quarter Sessions possesses one of the bullets in question, held under property receipt number 616303. Merritt's counsel asserted in response that the located bullet was the one removed from Dunbar. It is unknown whether the bullet removed from Baxter's leg still exists, and it has not been located to date.

Given the uncertain status of the evidence, Merritt's invocation of the PCRA's statutory exception for new evidence may have been groundless. If the parties can locate only one of the bullets, a SEM analysis could not compare the two bullets as Merritt requested.[4] It is important that petitioners and counsel, as well as the Commonwealth, heed the lesson learned from our experience in this case and ascertain the existence of any allegedly new evidence before filing a petition for habeas corpus on that basis. This will avoid unnecessary and wasteful expense to the parties and the courts and ensure that viable relief is available should petitioner prevail.

Despite the above concerns, we will not deem Merritt's habeas corpus petition moot because he raised additional, unrelated claims in his habeas petition. If we were to reach these other claims, primarily asserting ineffective assistance of counsel, they are not moot because they do not depend

---

4. In his response letter, Merritt's counsel argued that it may be possible, using the SEM technology, to compare the located bullet with pentascopic photographs taken of the bullets at trial. This assertion was given without support and is speculative.

on the availability of the bullet evidence or a SEM analysis. Therefore, we proceed on the assumption that Merritt's habeas corpus petition is not moot and consider whether his second PCRA petition for state post-conviction relief was "properly filed" under AEDPA.

When determining if a state petition is "properly filed," we must focus on the "state law governing when a petition for collateral relief is properly filed." *Fahy*, 240 F.3d at 243. In *Fahy*, we held that a PCRA petition that was dismissed by the state court as time-barred was not "properly filed" under AEDPA. *Id.* at 244. Relying on the state court's dismissal of the petitioner's PCRA action as untimely, we held that we were bound by the Pennsylvania Supreme Court's ruling that the "PCRA petition was not properly filed as a matter of state law." *Id.*[5]

Merritt attempts to distinguish *Fahy* by arguing that here, unlike in *Fahy*, Merritt alleged in his PCRA petition that it was timely under one of the PCRA's statutory exceptions to the statute of limitations. He argues that a state petition, even if found untimely by a state court, may nevertheless be "properly filed" under 28 U.S.C. § 2244(d)(2) if the state statute provides statutory exceptions to the time limit for filing.

In order to prevail on this argument, Merritt must have alleged one of the exceptions to the PCRA's statute of limitations in the state court. The Pennsylvania statutory exception on which Merritt seeks to rely is the one for the situation where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii). In its order, the PCRA court stated that "none of the exceptions to be found in § 9545(b)(1)(i)(ii)(iii) were *alleged* or proven here." *Commonwealth v. Monroe*, Nos. 1736-39, order at 7 (Phila. Co. Ct. C.P. August 12, 1997) (emphasis added); *see also Commonwealth v. Monroe*, No. 3909 Phila. 1997, slip op. at 4 (Pa. Super. Oct. 12, 1999) ("[Merritt] has not alleged that the petition is based on facts not previously known which

---

5. Although we held that Fahy was not entitled to statutory tolling, we granted him equitable tolling, primarily because it was a capital case.

could not have been ascertained earlier by exercising due diligence.").

Merritt's second PCRA petition was filed *pro se.* Under Pennsylvania law, we must read a *pro se* PCRA petition liberally. *See Commonwealth v. Murray,* 481 Pa. 201, 205, 392 A.2d 317, 319 (1978) ("prison-drawn *pro se* PCHA petitions must be read with liberality") (citing *Commonwealth v. Fox,* 448 Pa. 491, 295 A.2d 285 (1972)); *Commonwealth v. Garrison,* 303 Pa. Super. 555, 557, 450 A.2d 65, 66 (1982) (same). Although Merritt did not specifically cite the exception in 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii), he clearly made claims for relief in his petition based on the newly discovered evidence exception. For example, Merritt claimed he was eligible for relief because of "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome the trial if it had been introduced." App. at 16. He also alleged that, "[t]he use of an Electron Microscope in Ballistic Science is advanced technology that was unavailable at the time of the defendant's trial." App. at 20. Despite Merritt's failure to directly address the issue of the timeliness of his petition or invoke the relevant statutory provision, he sought relief provided by the exception and alleged facts to meet its requirements. Reading his *pro se* petition liberally, we conclude that he alleged a claim for relief based on the availability of newly discovered evidence.

We proceed therefore to consider whether Merritt's case can be distinguished from the Supreme Court's discussion in *Artuz* and our prior holding in *Fahy.* In *Artuz,* the Supreme Court held that "an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the time limits upon its delivery." *Artuz,* 531 U.S. at 8. Although that language appears to be sweeping, Merritt notes that the Supreme Court expressly stated that it "express[ed] no view on the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." *Id.* at 8 n.2. The reserved question is, of course, the issue before us.

The Court of Appeals for the Ninth Circuit has held that,

> if a state's rule governing the timely commencement of state post conviction relief petitions contains exceptions that require a state court to examine the merits of a petition before it is dismissed, the petition, *even if untimely*, should be regarded as properly filed [under AEDPA].

*Dictado v. Ducharme*, 244 F.3d 724, 727-28 (9th Cir. 2001)(emphasis added); *see also Smith v. Ward*, 209 F.3d 383, 385 (5th Cir. 2000) (holding that an untimely petition for state post-conviction relief was "properly filed" because the statute's exceptions to its timeliness requirements prevented the statute from imposing an "absolute bar to filing").

These decisions stem from the Supreme Court's analysis in *Artuz*, where it rejected the State's argument that the presence of procedurally barred claims rendered the state application improperly filed under AEDPA. Instead, the *Artuz* Court held that the state application was "properly filed" because the state provisions barring claims that had been previously decided or had not been raised on direct appeal did not "set forth a condition to filing, as opposed to a condition to obtaining relief." 531 U.S. at 11. It was this distinction — between conditions to filing and conditions to obtaining relief — that was the basis for the Ninth Circuit's decision in *Dictado*. Although Dictado's petition was successive, the state statute allowed a state court to consider a successive petition if it contained claims not raised in previous petitions or if it showed good cause for failure to raise the claim before. The court held that the statute governing successive state petitions is a condition to obtaining relief, not a condition to filing and under *Artuz*, a successive petition is "properly filed" under AEDPA. *Dictado*, 244 F.3d at 727. The *Dictado* court also held that because the statute of limitations for state post-conviction relief was not an "absolute bar to filing," satisfaction of one of the statutory exceptions to the statute of limitations was a condition to obtaining relief. *Dictado*, 244 F.3d at 728. In essence, the Ninth Circuit reasoned that the state court's analysis of whether a petition is timely under one of the statutory exceptions entailed an analysis of the merits of

the petition. It followed that when such an exception is asserted, an untimely state petition may still be considered "properly filed" under AEDPA. *Id.*[6]

We need not decide whether we would find the Ninth Circuit's analysis persuasive because we are bound by our prior holding in *Fahy*. We held in *Fahy* that an untimely PCRA petition does not toll the statute of limitations for a federal habeas corpus petition. 240 F.3d at 244. Although the petitioner in *Fahy* did not assert any of the PCRA's statutory exceptions to its timeliness rule, such as the newly discovered evidence exception, we do not find that distinction dispositive. In *Fahy*, we noted that when applying AEDPA, "we must look to state law governing when a petition for collateral relief is properly filed" and "defer to a state's highest court when it rules on an issue." *Id.* at 243-44. Consequently, just as in *Fahy*, we must defer to the state court's holding that Merritt's PCRA petition was untimely and it follows that it was not "properly filed" under AEDPA.

Our conclusion finds support in the Supreme Court's recent holding in *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134 (2002). In *Carey*, the Court considered whether the "reasonable" timeliness standard of California's state post-conviction relief statute tolled AEDPA's statute of limitations. Under California's unique procedure, a petitioner who sought to appeal the dismissal of a state petition must file a second, original petition in a higher state court within a reasonable period of time. The Supreme Court stated that AEDPA's statute of limitations would not

---

6. Merritt also cites *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001), to support his claim. In *Nara*, we held that a petitioner's *nunc pro tunc* motion in state court to withdraw his earlier guilty plea was "properly filed" under AEDPA. *Id.* at 316. It is significant that in *Nara* the petitioner filed his *nunc pro tunc* motion (motion to withdraw his guilty plea) at what may reasonably have been considered the suggestion of the Superior Court. The PCRA court denied Nara's *nunc pro tunc* motion for substantive reasons (i.e., because he gave no compelling reason why he waited 12 years to ask to withdraw his plea), rather than because of failure to comply with the state's filing rules. Therefore, as Merritt concedes, "*Nara* did not decide the question presented here. . . ." Petitioner's Br. at 34.

be tolled while the question of unreasonable delay was pending before the state court if the petition was ultimately found untimely. *Id.* at 2141. The Supreme Court did not adopt the argument Merritt makes here that a timeliness analysis involving the merits equates with a "condition to obtaining relief" under *Artuz*. Instead, the Court stated:

> If the California Supreme Court had clearly ruled that [petitioner's] 4 1/2-month delay was unreasonable, that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits.

*Id.*

This language undercuts Merritt's suggested interpretation of "properly filed." The California statute of limitations for state post-conviction petitions at issue in *Carey* was not an absolute bar and required an analysis by the state court. Nonetheless, the Supreme Court stated that even when the state court considered the merits of the underlying state claim as well as its timeliness, if the petitioner's delay in filing the state petition was ultimately found to have been unreasonable it would not toll the AEDPA statute of limitations. An untimely petition does not toll AEDPA's statute of limitations. *Carey*, 122 S. Ct. at 2141.

Our reading of *Carey* is supported by the Seventh Circuit's recent decision in *Brooks v. Walls*, 301 F.3d 839, 841 (7th Cir. 2002), *petition for cert. filed*, No. 02-7612 (U.S. Nov. 20, 2002), stating:

> *Saffold* tells us (ending any ambiguity left by *Artuz*) that to be properly filed an application for collateral review in state court must satisfy the state's timeliness requirements. This means that decisions such as *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001);[7] *Smith v. Ward*,

---

7. The Seventh Circuit may not have realized that, as we noted in *Nara*, we had been advised by the petitioner that the Pennsylvania courts had a practice to accept motions to withdraw guilty pleas *nunc pro tunc*, as they did Nara's. It was only after considering Nara's motion did the

> 209 F.3d 383 (5th Cir. 2000); *Emerson v. Johnson*, 243 F.3d 931 (5th Cir. 2001), and *Dictado v. Ducharme*, 244 F.3d 724 (9th Cir. 2001), to the extent they hold that petitions untimely under state rules nonetheless may be deemed properly filed, were wrongly decided.

Similarly, we hold that we are bound by the state court's finding that Merritt's second PCRA petition was untimely. Therefore, we affirm the District Court's order holding that Merritt's second PCRA petition was not "properly filed."

With all due respect to our dissenting colleague, even a brief reading of the above will demonstrate that it is simply wrong to state that our ruling departs from our precedent in *Fahy* and that we hold that a federal petition may be viewed as improperly filed regardless of the determination of the state court. As is evident from the above, nothing could be farther from the holding and language of this opinion.

The dissent's position stems from its interpretation of the sentence in *Fahy* where we stated, "[h]ere the Pennsylvania Supreme Court has specifically ruled that Fahy's petition was not properly filed as a matter of state law." *Fahy*, 240 F.3d at 244. The dissent interprets that sentence to mean that the Pennsylvania Supreme Court *stated* in its *Fahy* opinion that Fahy's PCRA petition was not "properly filed." One searches the Pennsylvania Supreme Court's opinion in *Fahy* in vain to find such language. *See Commonwealth v. Fahy*, 737 A.2d 214 (Pa. 1999). The dissent does not point to any page in the opinion nor have we found any such statement in the Pennsylvania Supreme Court's *Fahy* opinion. It is not reasonable to assume that the Pennsylvania court would have so stated because the language "properly filed" comes from a federal law, i.e., a

---

Pennsylvania court deny Nara's motion because he failed to give a compelling reason why he waited 12 years to ask to withdraw his guilty plea. *See Nara*, 264 F.3d at 313. The Pennsylvania court's reason for denying Nara's motion appears to have been based on the merits of the motion to withdraw the guilty plea rather than its failure to comply with the state's time requirements for filing a PCRA petition. After *Carey*, *Nara* would be analyzed differently.

provision of AEDPA, and not from Pennsylvania's PCRA statute.

As we stated above, AEDPA provides that the one-year period of limitation shall not run during "[t]he time during which *a properly filed* application for State post-conviction . . . review . . . is pending." 28 U.S.C. § 2244 (d)(2) (emphasis added). We are not persuaded by the dissent's contention that if "untimely" and "improperly filed" are coterminous, "Congress would have said 'timely filed' rather than 'properly filed' in § 2244(d)(2)." Dis. Op. at 26-27. The "properly filed" phrase encompasses more than timeliness. The Supreme Court stated in *Artuz*, "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the time limits upon its delivery." 531 U.S. at 8.

Our opinion in *Fahy* holds that we must look to state law to determine whether the state petition is "properly filed." 240 F.3d at 243. But it is federal law that sends us to the state court. We need not read that into our *Fahy* opinion, because the opinion so states explicitly: "Fahy is correct that in applying a federal statute we must construe its terms as a matter of federal law. . . . Therefore, to apply this statute [AEDPA] as a matter of federal law we must look to state law governing when a petition for collateral relief is properly filed." *Id.* The Pennsylvania Supreme Court ruled that Fahy's state petition was untimely. *Commonwealth v. Fahy*, 737 A.2d at 220, 224. Therefore, and with this procedural background, the Third Circuit panel stated, "the Pennsylvania Supreme Court has specifically ruled that Fahy's PCRA petition was not properly filed as a matter of state law," *Fahy*, 240 F.3d at 244, the sentence on which the dissent hinges. Had we stated, "the Pennsylvania Supreme Court has specifically ruled that Fahy's PCRA petition was *untimely* as a matter of state law," there would be nothing on which the dissent could be based. But the fact is that timeliness of the PCRA petition was the issue before the Pennsylvania Supreme Court and that was the issue that court decided. Its decision that the petition was untimely was the predicate for *Fahy's* holding that the petition was not "properly filed"

under AEDPA. Rather than being inconsistent with our decision in *Fahy*, this decision follows precisely the same path. The Pennsylvania Superior Court rejected Merritt's contention that his PCRA petition was timely, and we therefore hold that it was not "properly filed" for purposes of AEDPA.

Our difference with the dissent is more than a semantic one. The dissent includes two sentences that we believe are inconsistent with our requirement of deference to the state court's decision. The dissent states "a state court determination that a petition was untimely filed does not lead automatically to the conclusion that it was improperly filed for the purposes of § 2244(d)(2)," Dis. Op. at 27, and again, "a state court determination that a petition is untimely does not suffice to establish as a matter of state law that it is also improperly filed." *Id.* at 28. But the Supreme Court in *Carey* said precisely the opposite when it stated, in language quoted above, "[i]f the California Supreme Court had clearly ruled that Saffold's 4 ½-month delay was 'unreasonable,' that would be the end of the matter . . ." 122 S. Ct. at 2141. "Unreasonable" under California law is comparable to "untimely" under Pennsylvania law. Although the dissent disagrees, we read the decision as holding that if a state's Supreme Court has determined that a petition was not timely, then we *must* hold that it was not properly filed.

Finally, the dissent's proposed disposition is directly counter to our responsibility to give deference to the state court's determination of the timeliness of the state PCRA petition. The dissent "would remand this case to the district court for a determination whether under Pennsylvania law Merritt's state petition was properly filed." Dis. Op. at 30. However, as we stated above, the Pennsylvania Superior Court (the highest Pennsylvania court to have ruled on the matter) has already expressly rejected the one ground on which Merritt claims his PCRA petition was timely, i.e., that it fell within the state exception for petitions claiming new evidence. The Pennsylvania court stated, "[w]e have reviewed these exceptions [in PCRA § 9545] in light of the allegations of the petition and conclude that none of the exceptions is applicable to this proceeding." *Commonwealth*

*v. Monroe*, No. 3909 Phila. 1997, slip op. at 4 (Pa. Super. Oct. 12, 1999).[8] Once the Pennsylvania court has so decided, it would be an undue interference for a federal district court to decide otherwise.

It follows that nothing in the dissent causes us to revise our disposition to affirm.

## D.  Equitable Tolling

This court has held that the AEDPA statute of limitations is subject to the doctrine of equitable tolling. *Fahy*, 240 F.3d at 244. Equitable tolling is available " 'only when the principle of equity would make the rigid application of a limitation period unfair.' " *Id.* (quoting *Miller v. New Jersey Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)). In *Fahy*, we restated the two general requirements for equitable tolling: (1) that "the petitioner has in some extraordinary way been prevented from asserting his or her rights;" and (2) that the petitioner has shown that "he or she exercised reasonable diligence in investigating and bringing [the] claims." *Id.*

Merritt argues that the statute of limitations for his habeas petition should be equitably tolled, and relies on the finding of the Magistrate Judge that Merritt "acted diligently and reasonably when he filed his second PCRA petition rather than filing a habeas petition." App. at 11 (Magistrate Judge's Report & Recommendation). The Magistrate Judge remarked that both Merritt and Fahy "filed second or successive PCRA petitions at a time when 'Pennsylvania law was unclear on the operation of the new PCRA time limit.' " App. at 10 (quoting *Fahy*, 240 F.3d at 245) (footnotes omitted).[9]

8. Indeed, Fahy had also argued unsuccessfully that his PCRA petition was timely because he invoked one of the exceptions to the PCRA timeliness requirement (albeit a different exception than Merritt invoked). The Pennsylvania Supreme Court rejected Fahy's argument, and *we* held it was not "properly filed."

9. We note that the Magistrate Judge also stated that Merritt had not provided evidence to support his claim that he could not have learned of the existence of SEM technology before November 1996. She stated:

Like the present case, *Fahy* dealt with the timeliness of a habeas corpus petition where the petitioner's state post-conviction petition was dismissed in state court as untimely. We recognized that in 1997, when Fahy's PCRA petition was filed, the newly established PCRA time limit was "unclear" and "inhibitively opaque." *Fahy*, 240 F.3d at 245. Indeed, we stated that based on that uncertainty, Fahy "reasonably believed that the state petition was properly filed." *Id.* at 244. However, as the Magistrate Judge recognized in this case, in *Fahy* we "did not hold that this lack of clarity in Pennsylvania law constituted extraordinary circumstances." App. at 11. In fact, we stated that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." 240 F.3d at 244. Instead of finding extraordinary circumstances, we based our decision to apply equitable tolling in *Fahy* on the accepted principle that "death is different." *Id.* at 244. We stated that "[i]f the limitation period is not tolled in this case, Fahy will be denied all federal review of his claims." *Id.* at 245; *see also Banks v. Horn*, 271 F.3d 527, 534-35 (3d Cir. 2001), *rev'd on other grounds, Horn v. Banks*, 536 U.S. 266, 122 S.Ct. 2147 (2002).

This case is similar to *Fahy*. In 1996, when Merritt filed his second *pro se* PCRA petition, the operation of the PCRA statute of limitations was uncertain, and it was not unreasonable (indeed it was appropriate) for Merritt to have

---

there is evidence in the record that SEM technology existed well before the petitioner learned of it by watching a television program in November 1996. In his memorandum of law, the petitioner cites to a chapter on SEM in a 1981 book titled Scientific and Expert Evidence. Further, the petitioner has attached a copy of Chapter 29 of this book to his memorandum of law. That chapter clearly indicates that SEM technology existed as early as 1971 and its use in forensic science was being considered in the 1970's. Thus, it is not clear that petitioner exercised due diligence in learning of the existence of SEM technology.

App. at 7 n.5.

believed he was required to exhaust his state remedies by filing a second PCRA petition prior to filing a habeas petition in federal court. Although the Magistrate Judge was aware of the comparability, she did not recommend equitable tolling for Merritt because she stated that, unlike *Fahy*, Merritt does not face the death penalty. The fact that *Fahy* was a death penalty case was the dispositive factor in that case, as we stated that, "[i]n a capital case . . . the consequences of error are terminal, and we therefore pay particular attention to whether principles of 'equity would make the rigid application of a limitation period unfair' . . . ." *Fahy*, 240 F.3d at 245 (citation omitted). We then concluded, "[b]ecause the consequences are so grave and the applicable law is so confounding and unsettled, we must allow *less* than 'extraordinary' circumstances to trigger equitable tolling of the AEDPA's statute of limitations. . . ." *Id.* (emphasis added).

In *Fahy*, we clearly limited the lower bar that we established for equitable tolling to capital cases, and Merritt is not in that position. Although Merritt faces the grave penalty of mandatory life sentence without the possibility of parole, we cannot apply the rationale of *Fahy* to Merritt's situation without violating our tradition of avoiding intra-circuit conflict of precedent.[10]

---

10. *See* 3d Cir. I.O.P. 9.1. Undoubtedly, there will be other habeas petitioners who find themselves in similar situations where their need to exhaust state remedies will create a tension with the one-year statute of limitations in AEDPA. Some of these petitioners may have simply been neglectful of their responsibility to exhaust at the outset, but others, such as those who have legitimate grounds to claim discovery of new evidence, may not have had that opportunity. The federal courts should seek ways to ameliorate the consequences for these petitioners in appropriate cases.

Thus, for example, when petitioners have filed habeas actions in federal court before they have fully exhausted their state remedies, many federal courts have suggested that the federal action should be stayed to give the petitioners an opportunity to file their state action because an outright dismissal, even if without prejudice, could jeopardize the timeliness of a collateral attack. *See, e.g., Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002) (approving Second Circuit approach of granting a stay with time limits upon the petitioner to bring his claims); *Zarvela v.*

Nor do we see any reason under the facts of this case to decide whether to apply equitable tolling, which Merritt seeks to invoke based on the uncertainty of Pennsylvania law regarding its time bar. Pennsylvania law as to the time bar of the PCRA became clear with the decisions of the Pennsylvania Superior Court in *Commonwealth v. Alcorn*, 703 A.2d 1054 (Pa. Super. Ct. 1997), and *Commonwealth v. Conway*, 706 A.2d 1243 (Pa. Super. Ct. 1997). Merritt did not act promptly thereafter to file his petition for habeas corpus in federal court. Instead, he waited more than two years, filing his petition on May 5, 2000. Accordingly, we agree with the District Court that there is no basis to find Merritt's habeas petition timely, either under the statute or under the doctrine of equitable estoppel.

## III.

### CONCLUSION

Based on the foregoing analysis, we will affirm the order of the District Court, entered May 30, 2001, dismissing Merritt's petition for a writ of habeas corpus as untimely.

---

*Artuz*, 254 F.3d 374 (2d Cir.), *cert. denied*, 534 U.S. 1015 (2001) (holding district court should have stayed habeas petition and only dismissed unexhausted claims where complete dismissal jeopardized the timeliness of collateral attack); *Calderon v. United States Dist. Court*, 134 F.3d 981 (9th Cir. 1998) (denying state's challenge to district court order holding habeas petition in abeyance while petitioner exhausted claims in state court); *Neverson v. Bissonnette*, 261 F.3d 120, 126 n.3 (1st Cir. 2001) (noting that post-AEDPA, it may be appropriate to stay a habeas corpus petition until state remedies are exhausted); *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir.), *cert. denied*, 531 U.S. 946 (2000) (noting that dismissal of habeas corpus petition is not proper when it would jeopardize the timeliness of a collateral attack). These opinions often cite the concurrence of Justice Stevens, joined by Justice Souter, suggesting this approach in *Duncan v. Walker*, 533 U.S. 167, 182-83 (2001) (a non-capital case). Because Merritt chose to file his petition in state court rather than in federal court when he had to make a choice, this procedure would be inapplicable.

*ROSENN*, Circuit Judge, dissenting:

The majority's ruling departs from our precedent in *Fahy v. Horn*, 240 F.3d 239 (3d Cir. 2001), in enunciating a federal rule that all untimely filed state petitions are *per se* filed improperly for the purposes of 28 U.S.C. § 2244(d)(2). The majority so holds regardless of whether or not the state court makes this determination and whether the petitioner has a colorable argument that his or her state post-conviction petition fits into a valid exception to the state statute of limitations. The majority is also in conflict with the well-reasoned opinions of the Fifth and Ninth Circuit Courts of Appeal. *See Smith v. Ward*, 209 F.3d 383 (5th Cir. 2000); *Dictato v. Ducharme*, 244 F.3d 724 (2001). Moreover, the majority's approach is not compelled by Supreme Court precedent in *Artuz v. Bennett*, 531 U.S. 4 (2000) or *Carey v. Saffold*, 122 S. Ct. 2134 (2002). Finally, the majority opinion undermines well-established principles of comity emphasized by the Supreme Court in *Carey*. I, therefore, respectfully dissent.

## I.

AEDPA imposes a one-year statute of limitations on applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. *See* 28 U.S.C. § 2244(d)(1).[1] This subsection contains a tolling provision during the pendency of a properly filed application for state post-conviction review. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Merritt's habeas petition was filed after April 23, 1997. Thus, his claim is time-barred unless § 2244(d)(1)'s one-year statute of limitations was tolled. The current dispute hinges on whether an untimely claim for state post-conviction review can nevertheless have been a "properly filed application" for the

---

1. A prisoner with a state conviction that became final prior to the enactment of AEDPA had until April 24, 1997 to file a federal habeas corpus petition. *See Smith*, 209 F.3d at 384.

purposes of tolling the statute of limitations under § 2244(d)(2).

The Supreme Court has given some guidance on this question. An application is "filed" when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. *See Artuz*, 531 U.S. at 8. An application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. *Id.* These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. *Id.* The question of whether an application has been "properly filed" is "quite separate" from the question of whether the claims contained in the application are meritorious and free of procedural bar. *Id.* at 9. *Artuz* held that untimely filing and improper filing were interrelated, but declined to state that they were coterminous.

As the majority acknowledges, the Supreme Court in *Artuz* expressly reserved the central question presented here, namely whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed. *Id.* at 8 n.2 ("We express no view on the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed. *See, e.g.*, *Smith v. Ward*, 209 F.3d 383, 385 (CA5 2000).").

The majority's choice of law analysis is inconsistent with our holding in *Fahy*. The majority enunciates a federal *per se* rule that an untimely state petition can never meet § 2244(d)(2)'s requirement of "properly filed," regardless of state law or state court findings of fact. *See* Majority op. at 14 ("An untimely petition does not toll AEDPA's statute of limitations"). In contrast, the Court stated in *Fahy* that:

> Fahy argues that we must decide whether his state PCRA petition was "properly filed" as a matter of federal law and that the state court's determination of this issue is not binding on us. Fahy is correct that in applying a federal statute we must construe its terms

as a matter of federal law. However, the AEDPA explicitly directs us to toll the statute of limitations only when a collateral petition for state relief was "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Morris*, 187 F.3d at 338. Therefore, *to apply this statute as a matter of federal law we must look to state law governing when a petition for collateral relief is properly filed. The AEDPA requires us to interpret state law as we do when sitting in diversity cases, and we therefore must defer to a state's highest court when it rules on an issue.* Here the Pennsylvania Supreme Court has specifically ruled that Fahy's PCRA petition was not properly filed as a matter of state law.

*Fahy*, 240 F.3d at 243-44 (emphasis added). *Fahy* requires this Court to decide as a matter of state law whether the petition was properly filed before coming to a conclusion as to whether the statute of limitations is tolled under § 2244(d)(2). To create a federal *per se* rule that untimely filing always equals improper filing deprives the Commonwealth of Pennsylvania of the ability to determine what constitutes proper filing.

Although the *Fahy* court ultimately held that under state law Fahy's petition was not properly filed, *Merritt* presents a much stronger case for proper filing. The Pennsylvania courts held that Merritt's claim was untimely filed, but did not specifically hold that it was improperly filed. In contrast, *Fahy* specifically states that the Pennsylvania Supreme Court found that Fahy's claim was improperly filed. *Fahy*, 240 F.3d at 244 ("Here the Pennsylvania Supreme Court has specifically ruled that Fahy's petition was not properly filed as a matter of state law").[2]

---

2. The majority implies that this Court made a misstatement in *Fahy* when it held that "the Pennsylvania Supreme Court has specifically ruled that Fahy's petition was not *properly filed* as a matter of state law." *Fahy*, 240 F.3d at 244 (emphasis added). The majority looks to the underlying Pennsylvania state court opinion to challenge the basis for this Court's reading of Pennsylvania law and the state court's application of Pennsylvania law to the facts of that case. *See* Majority Op. at 16. In my view, this question has already been adjudicated by this Court and

Two of the other three Courts of Appeals that have considered the question reserved in *Artuz* have ruled that untimely filed petitions can nevertheless be properly filed if the state courts rule that the petitioner had a colorable argument that the petition fits within a recognized exception to the statute of limitations.

In *Smith*, the Fifth Circuit Court of Appeals held that a petition is properly filed, even if eventually dismissed as untimely, when the state statute governing timely filings contains certain exceptions. *See Smith*, 209 F.3d at 385. The court reasoned that the state statute "does not impose an absolute bar to filing; instead it limits the state court's ability to grant relief." *Id. Smith* drew the line between a condition to filing and a condition to relief at the point when the court accorded the petition "*some level* of judicial review." *See id.* at 384 (emphasis in original) (*citing Villegas v. Johnson*, 184 F.3d 467, 470 n.2 (5th Cir. 1999)).[3]

Likewise, the Ninth Circuit Court of Appeals has ruled that "if a state's rule governing the timely commencement

we are bound by the holding of the *Fahy* court with respect to the meaning of the underlying opinion. *See* 3d Cir. Internal Operating Procedures Rule 9.1 ("It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels.").

Moreover, whatever factors *Fahy* took into account in reaching this interpretation of the state law question of whether Fahy's petition was properly filed, the *Fahy* panel looked to Pennsylvania law, not federal law, to answer the question. *See Fahy*, 240 F.3d at 243-44 (". . . to apply this statute as a matter of federal law we must look to state law governing when a petition for collateral relief is properly filed. The AEDPA requires us to interpret state law as we do when sitting in diversity cases, as we therefore must defer to a state's highest court when it rules on an issue.").

3. In *Villegas*, the Court of Appeals held that § 2244(d)(2) should be interpreted in light of principles of statutory construction and in light of concerns regarding comity and exhaustion. *See Villegas*, 184 F.3d at 470. Thus, a state habeas petition is properly filed when it conforms with a state's applicable procedural filing requirements — i.e., those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review. *See id.* at 470 n.2.

of state post-conviction relief petitions contains exceptions that require a state court to examine the merits of a petition before it is dismissed, the petition, even if untimely, should be regarded as 'timely filed.' " *Dictado*, 244 F.3d at 727-28. The Ninth Circuit reasoned that the statute is properly regarded as a "condition to obtaining relief" rather than a "condition to filing." *Id.* at 728 (citing *Artuz*).

Recently, the Seventh Circuit Court of Appeals also considered this question and reached an opposite conclusion. In *Brooks v. Walls*, 301 F.3d 839 (7th Cir. 2002), the court ruled that the Supreme Court had overruled *Smith* and *Dictato* and resolved the question left open in *Artuz*. Like the majority today, the *Brooks* court pointed to *Carey v. Saffolk*, 122 S. Ct. 2134 (2002), in support of its federal *per se* rule. *Carey* involved the question of whether California's unique "reasonable timeliness" standard tolled AEDPA's statute of limitations. The United States Supreme Court held that AEDPA's statute of limitations would not be tolled while the question of unreasonable delay was pending before the state court if the petition was ultimately found to be unreasonable. *See Carey*, 122 S. Ct. at 2141 ("If the California Supreme Court had clearly ruled that Saffold's 4½-month delay was '*unreasonable*,' that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits") (emphasis added). Interpreting this passage, *Brooks* concluded that "[*Carey v.*] *Saffold* tells us (ending any ambiguity left by *Artuz*) that to be properly filed an application for state collateral review in state court must satisfy the state's timeliness requirements." *Brooks*, 301 F.3d at 841; Majority op. at 14.

In my view, *Carey*'s holding is narrower than this. *Carey* holds that state habeas petitioners who *unreasonably* delay filing a state collateral petition will not obtain the benefit of the tolling provisions of the AEDPA. *Carey* does not make the much broader claim that the majority here makes that "[a]n untimely petition does not toll AEDPA's statute of limitations." Majority op. at 14.

"Untimely," "unreasonable," and "improperly filed" are not all synonymous. If they were, Congress would have said

"timely filed" rather than "properly filed" in § 2244(d)(2). "Timely" is defined as "done or occurring at a suitable time" and "improper" is defined as "not accordant with fact, truth, or right procedure." *Webster's Third New Int'l Dictionary Unabridged* 2395 (1993); *id.* at 1137. The Supreme Court determined in *Carey* that when a California court finds that a state petition was unreasonably delayed under California law, it was therefore never "pending" for AEDPA law purposes. It does not follow that *Carey* sought to resolve — without saying so — the question of whether all untimely filed petitions are *per se* improperly filed as a matter of federal law. *Carey* reasonably or plausibly cannot be read to overrule not only *Smith* and *Dictato*, but also *Fahy*'s choice of law analysis. It is paradoxical to suggest that *Carey* overruled *Fahy* on the choice of law question because the *Carey* opinion is an intricate exegesis of a unique California state law that based its outcome on comity grounds.

If "untimely filed" and "improperly filed" are not coterminous, a state court determination that a petition was untimely filed does not lead automatically to the conclusion that it was improperly filed for the purposes of § 2244(d)(2). The majority opinion depends on the following syllogism: (1) All untimely petitions are improper; (2) This petition was untimely; (3) Therefore, this petition is improper. If one accepts the first premise, the other steps follow ineluctably, but the first step is in conflict with *Fahy*. For instance, the majority states that: "Consequently, just as in *Fahy*, we must defer to the state court's holding that Merritt's PCRA petition was untimely and it follows that it was not 'properly filed' under AEDPA." Majority op. at 13. This syllogism is also apparent in the majority's statement that ". . . we hold that we are bound by the state court's finding that Merritt's second PCRA petition was untimely. Therefore, we affirm the District Court's order holding that Merritt's second PCRA petition was not 'properly filed.'" Majority op. at 15. However, *Fahy* states that the Pennsylvania Supreme Court found that the petition was improperly filed, not just untimely filed. *Fahy*, 240 F.3d at 244. Unless untimely filing is *per se* improper as a matter of federal law (as the majority today holds), *Fahy* holds that state law should govern the question of whether the petition

was properly filed even after a determination that it was untimely. *Fahy* did not hold that "untimely" and "improper" were coterminous.

*Fahy* requires that we defer to the state court's conclusions both with regard to untimely filing and improper filing separately. Thus, a state court determination that a petition is untimely does not suffice to establish as a matter of state law that it is also improperly filed. To conclude that a petition was not properly filed, we must either: (1) conclude that the state court determined as a question of fact that the petition was improperly filed and not just untimely filed; or (2) look to state law rather than federal law to answer the question of whether timely filing and proper filing should be equated for the purposes of § 2244(d)(2). In contrast, the majority opinion bypasses the question of how Pennsylvania law would interpret the proper filing requirement and instead creates a federal *per se* rule that untimely filing is categorically improper. In doing so, the majority ignores all notions of comity.

In *Carey*, the Supreme Court made it clear that its main interest was in promoting principles of comity. As Justice Breyer wrote for the majority:

> The exhaustion requirement serves AEDPA's goal of promoting "comity, finality, and federalism" by giving state courts "the first opportunity to review [the] claim," and to "correct" any "constitutional violation in the first instance." And AEDPA's limitations period — with its accompanying tolling provision — ensures the achievement of this goal because it "promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments."

*Carey*, 122 S. Ct. at 2138 (internal citations omitted). The majority opinion undermines this strong policy because it encourages habeas petitioners with colorable arguments that they have an unexpired state collateral claim to file a federal habeas claim, rather than pursue a non-frivolous state collateral claim, for fear of being barred by AEDPA's statute of limitations.

The principles of comity that were an important consideration in *Carey* favor Merritt's interpretation of

"properly filed" and the ruling in *Fahy*, rather than the approach taken by the majority. As Chief Judge Becker explained in *Lovasz v. Vaughn*, 134 F.3d 146 (3d Cir. 1998), "[p]rinciples of comity inform our decision . . . and a federal court should not find a state prisoner's claims procedurally barred from federal habeas review unless state law 'clearly foreclose[s]' review of the claims." *See id.* at 148. This admonition ensures that states have "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *See id.*

In enacting AEDPA, Congress aimed to reduce federal intrusions into state criminal proceedings. *See id.* The rule in *Fahy* advances this goal by permitting the state courts to determine as a matter of fact and law whether an application for post-conviction comports with state law, rather than insisting that a federal habeas claim must be filed despite a plausible state claim in order to avoid running afoul of § 2244(d)(1). To rule otherwise usurps the power of the state court to adjudicate claims that arguably fit within a recognized exception to a statute of limitations and undermine the policy principle underlying *Carey*.

When a petitioner makes a colorable argument that his claim fits into a recognized exception to a time limit for filing, such that the state court must examine the petition before dismissing it to determine whether the exception applies, the state court should be empowered to find as a fact that the claim fits and determine as a matter of law that fitting within the exception is a "condition to obtaining relief" and not a "condition to filing." *Cf. Artuz*, 531 U.S. at 11; *Dictado*, 244 F.3d at 727; *Smith*, 209 F.3d at 385. Comity requires nothing less. Contrary to the view of the majority opinion at 18, our proposed disposition is in keeping with our responsibility as stated in *Fahy* to defer to the state courts' determination whether the filing was "proper."

I agree with the majority that under the liberal pleadings standards customarily afforded to pro se petitioners, the Magistrate Judge erred in concluding that Merritt did not claim that his petition falls within a recognized exception to

Pennsylvania's statute of limitations for post-conviction petitions. Majority op. at 11.[4]

## II.

Accordingly, for the reasons set forth above, I would remand this case to the district court for a determination whether under Pennsylvania law Merritt's state petition was properly filed.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*

---

4. I agree with the majority that equitable tolling does not apply here. Majority op. at 18.